## Huey, Sr., et al. v. Bristow, et al.

(Decided December 18, 1917.)

### Appeal from Boone Circuit Court.

Wills—Testamentary Incapacity—Undue Influence—Evidence—Sufficiency.—In a will contest, evidence of testamentary incapacity and undue influence, examined and held sufficient to sustain a verdict against the will.

O. M. ROGERS and R. G. WILLIAMS for appellants.

JOHN B. O'NEAL, L. F. BROWN and S. W. TOLIN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Several years after the death of his wife and only child, James Linn Huey died in Boone county on July 13, 1914, in his 76th year, leaving as his only heirs at law, a brother, T. A. Huey, Sr., and five nieces and nephews, who were the children of deceased sisters. By his last will and testament made and published on July 11th, two days before his death, he devised his entire estate to his brother, T. A. Huey, Sr., and his two sons, T. A. Huey, Jr., and James W. Huey. Annie Bristow, and others, the disinherited nieces and nephews, resisted the probate of the will. After a hearing by the county court the will was probated. On appeal to the circuit court, the jury found that the paper probated was not the last will and testament of the testator. Judgment was entered accordingly and the propounders appeal.

The grounds of contest were mental incapacity and undue influence, and it is the contention of the propounders that the evidence bearing on these questions was not sufficient to sustain the verdict.

Owing to the number of witnesses and the size of the record, we deem it unnecessary to give a detailed state-

ment or analysis of the testimony. It appears that the testator was a prosperous and thrifty farmer, and a man of high character and integrity. While he spoke to the contestants, his relations with them do not appear at all cordial or intimate. For a number of years after the death of his wife, he lived with various tenants on his farm. For two or three years prior to his death, he lived with the propounders. After being with them for a while, he divided his household goods among them. There is but little evidence of any mental failure prior to the stroke which finally resulted in his death. To certain witnesses he expressed his purpose to make a will in favor of the propounders, while to others he declared that the propounders had already gotten enough of his estate and that he had no intention of making a will. On July 2, 1914, and just nine days before the will was written, and eleven days before his death, he suffered a stroke of apoplexy which paralyzed, to a certain extent, his vocal organs and the right side of his body. According to the evidence for the propounders, the testator suggested on the morning the will was written, that he wished to dispose of his property. Certain certificates of deposit for several thousand dollars were produced, endorsed, and delivered to the propounders. The endorsement was made by Mr. Clements, who was present, and the testator made his mark thereto after the pen had been put in his paralyzed hand and his hand placed upon the certificates. Mr. Clements then started to prepare a will, but was afraid he could not prepare it in legal form. It was then concluded to call in an attorney, and Mr. O. M. Rogers, of Erlanger, was telephoned to. He reached the house about 11 o'clock and after conferring with the testator, prepared the will in question in accordance with his directions. He and the other witnesses for the propounders say, that although the testator spoke with difficulty, his mind was clear and his conversation was perfectly intelligible. After the will was written, it was read to the testator, who declared that it accorded exactly with his wishes. Thereupon Mr. Rogers wrote the testator's name on the will at his direction, and the testator with his assistance touched the pen and made his mark. The attesting witnesses, N. H. Clements, O. O. Dixon, E. E. Utz and R. L. Huey, were then called in and the testator acknowledged the instrument to be his last will and testament in their presence. The attorney who prepared the will and other witnesses, including the physician who attended the testator in his

last illness, gave it as their opinion that the testator had a disposing mind and memory at the time the will was made. The testimony for the contestants is to the effect. that the stroke of apoplexy resulted from a blood clot on the brain, that it was of a progressive character, and that the condition of the testator gradually grew worse until the stroke resulted in his death. It was further shown that for a day or two before the preparation of the will and on that day, he lay in a stupor and knew but little of what was going on. It also appears from these witnesses that the endorsment of the certificates of deposit was made at the suggestion of R. L. Huey, one of the devisees under the will. Two physicians in answer to hypothetical questions based on the facts developed by the evidence of the contestants, gave it as their opinion that the testator did not have testamentary capacity. A physician introduced by propounders also gave a similar opinion. The same witnesses, however, gave it as their opinion that the testator did have testamentary capacity if the facts were as claimed by the witnesses for the propounders. Certain witnesses also stated that when the paper was presented to the testator for his acknowedgment, it was referred to, not as a will, but as an instrument of writing. It was also shown that a neighbor who had been present and assisted in nursing the testator on Thursday night between the hours of eight and one o'clock, and who says that the testator was practically unconscious during that time, was told when he appeared at the house on the morning the will was written, that the doctor had said that only the members of the family should be admitted into the presence of the testator, and that this neighbor was then sent away to procure ice.

It will thus be seen that while the evidence is conflicting on the question whether the testator's mind was clear when the will was executed, there is no dispute as to the fact that he suffered a stroke of apoplexy on July 2nd, which resulted, first, in partial paralysis and finally in his death, nine days later, and only two days after the will was written. Viewing his condition on July 11th in the light of the fact that the disease was of a progressive character, and in the light of the testimony that the testator was practically in a stupor, and of the opinions of the physicians based upon these conditions, there can be no doubt that the question of testamentary capacity was for the jury. Nor can it be said that there was no ev-

idence of undue influence. When the testator was strong and well, he declared his purpose not to make a will. The will in question was made when he lay paralyzed and helpless on his bed. There is not only direct evidence that he disposed of his property at the suggestion of one of the devisees, but circumstances from which it could be inferred that in making the will in question, he was not carrying out any fixed purpose of his own, but was merely yielding to the influences of those whom he did not have the strength to resist.

In reaching this conclusion, we do not question the good faith of the attorney who prepared the will. On the contrary, we have no doubt that he honestly and truthfully detailed all of the circumstances just as they appeared to him. Even he, however, had no means of knowing whether the testator's directions respecting the disposition of his property represented the wishes of the testator or were the result of the control and dominion exercised over him by the devisees.

Judgment affirmed.